REBECCA KEPCHA, Plaintiff in Error, *vs.* JAMES C. LOW-
MAN *et al.* Defendants in Error.

*Opinion filed February 25, 1911.*

1. PARTITION—*when heir must be charged with pro rata por-
tion of mortgage.* Where a mortgage is given to secure *bona fide*
debts of heirs which were contracted by a portion of the heirs for
the benefit of all of them, it is proper, in partitioning the estate,
to charge with its *pro rata* share of the indebtedness the interest
of an heir who claimed she did not sign the mortgage or that if
she signed she did so because of misrepresentation, where there is
no evidence of misrepresentation by anyone, and it appears that the
mortgage was signed by her, or by some one for her with her
consent, and acknowledged by her.

2. SAME—*widow may, by arrangement with heirs, receive part
of rent.* The widow may, by arrangement with the heirs, receive
a part of the rent as dower, and an heir who consents to such an
arrangement is not entitled to thereafter demand an accounting
upon the ground that the widow was not entitled to any share of
the rents because she had not made any legal demand for dower
and had the same assigned to her.

3. SAME—*when heir is not entitled to accounting for rents and
profits.* Where, by written agreement between the widow and cer-
tain heirs, the widow and one daughter are allowed to occupy a
residence and have the use of certain land, and the daughter is to
have $75 a year as further compensation for services in attending
the widow, an heir who knew of and assented to the arrangement,
even though she may not have signed the written agreement, is not
entitled to an accounting for the rents received up to the time of
the widow's death, which were not much greater in amount, if any,
than the widow would have been entitled to as dower.

4. JURISDICTION—*when return of summons as set out in trans-
cript is not sufficient.* A return set out in the transcript of a judg-
ment before a justice of the peace in the words, "Personally served
the within writ by reading the same to the within named defend-
ant, George Kepcha, leaving a copy for Rebbeka Kepcha with her
husband," does not show such circumstances as authorize the ser-
vice of summons upon the wife by leaving a copy, and a judgment
against her based upon such service is void.

5. JUDICIAL SALES—*when a sheriff's deed is invalid as based on
a void judgment.* A sheriff's deed to the interest of a married
woman in land is invalid where the transcript of the judgment of

the justice of the peace on which the execution and sale were based shows only that summons was served on her by leaving a copy with her husband, there being no showing that summons could not have been served upon her by reading the same.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. T. N. GREEN, Judge, presiding.

O. A. SMITH, for plaintiff in error.

CAMERON & CAMERON, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This writ of error is sued out to review a decree of the circuit court of Tazewell county partitioning certain real estate. John Lowman died intestate in said county in May, 1891, leaving a widow and nine children and two grandchildren as his only heirs-at-law. The widow died January 22, 1905. Hannah Lowman, one of the daughters, died in 1892, unmarried and without children. Jennie Lowman Johnson, another of the daughters, died in 1898, leaving a husband, William Johnson, but no children. Anna Lowman, another of the daughters (who was insane) died in 1906, unmarried and without children. Henry C. Lowman, one of the sons, died in 1907, unmarried and without children. The original heirs of John Lowman who still survive are James C. Lowman, Edward W. Lowman, Elizabeth Wagenbach, Rebecca Kepcha (who is the plaintiff in error) and two grandchildren, Elizabeth M. Tobias and John H. Martin, children of a deceased daughter. John Lowman died seized of a farm of about 234 acres in Tazewell county, upon which he and his wife and several of the children were living at the time of his death. A bill for partition, setting forth the death and seizin of the father and a list of his heirs, was filed by James C. Lowman in 1905. It also alleged that the complainant had purchased

of Edward W. Lowman, in 1902, the latter's share, and at about the same time had also purchased of his mother her interest, taking deeds therefor; that he was the owner of the interest of Henry C. Lowman in all of said land except ten acres, and of the interest of Rebecca Kepcha in a ten-acre tract and a quarter section of the said premises; that George C. Glassford holds a mortgage on said premises for $2675, securing various notes given by certain of the heirs to raise money for the benefit of the estate and to keep it intact during the lifetime of the mother. After various pleadings were filed plaintiff in error filed a cross-bill, upon which the case was finally heard. The cross-bill, after alleging the decease of John Lowman seized of the premises in question, and the heirship, represented that the sheriff's deed under which James C. Lowman claimed to own the interest of plaintiff in error in a part of said premises was void, because the original judgment before a justice of the peace on which it was based was rendered without personal service on said Rebecca Kepcha. It further alleged that the plaintiff in error did not sign the mortgage in question owned by Glassford, or if she did, it was because of false representations made to her, she not knowing that it was a mortgage; that the mortgage was given to secure debts of Henry C. and Edward W. Lowman; that the widow of John Lowman, and several of the heirs other than plaintiff in error, had had the use of all the real estate in question for many years or rented it to various parties, and should be required to account for the rents and profits. The cross-bill asked for partition, but prayed that the various matters might be inquired into and the interests of the parties found in accordance with the allegations of said cross-bill. After the pleadings were at issue the case was referred to a master to take evidence. Objections were made and exceptions taken to the master's report. The court, after hearing, entered a decree finding that the mortgage in question was to secure money loaned for the benefit of all the heirs in

order to protect their interests in the land, and should be
charged *pro rata* to plaintiff in error's share of the real es-
tate; that the sheriff's deed was valid; that the plaintiff in
error was not entitled to an accounting of the rents and
profits from Elizabeth Wagenbach and the estate of Eliza-
beth Lowman; that the agent of the heirs had in his hands
a portion of the rents received by him, the exact amount
not appearing from the evidence, which was left for future
adjustment between the parties.    The decree found the
rights of the parties and ordered a partition.

Plaintiff in error first contends that in equity she is
not bound to pay her *pro rata* share except in $1176.65 of
the $2675 mortgage.  The circumstances connected with
the execution of this mortgage, as shown by the evidence,
are substantially as follows:   During the lifetime of the
ancestor, John Lowman,. a mortgage given by him on a
part of the premises in question was foreclosed, the land
sold and a master's deed given to one Henry S. Weers.   In
order to re-invest the heirs with title, after the death of the
father Edward and Henry Lowman, on October 15, 1891,
borrowed certain money, and gave a note for $1500 and
another note for $500, secured by mortgage on the premises
in question, to Matthew Kingman.   In order to settle with
Weers, Edward and Henry Lowman paid out $1176.65.
The testimony tends to show that the heirs also had to pay
out certain other moneys at this time to settle claims against
their father's estate.   A third note for $500 was given to
said Kingman on the same day, October 15, 1891, secured
by a mortgage signed by Elizabeth, Hannah, Henry and
Edward Lowman, Jennie Johnson, Elizabeth Wagenbach
and plaintiff in error.   As a result of these transactions the
title to the land was re-conveyed by Weers to the heirs of
said John Lowman.   Afterward Kingman died, and the
notes and mortgage were purchased of the Kingman estate
by George C. Glassford.   These notes were drawing seven

per cent interest. Some of the heirs thought this was too
high a rate and entered into negotiations with Glassford
for the purpose of reducing the interest. In December,
1892, he agreed to reduce it to six per cent provided they
would give another mortgage to secure the three notes in
question, (and also to secure three interest coupon notes,
amounting to $175,) said mortgage to be signed by the
mother and also by James, Henry and Edward Lowman,
Elizabeth Wagenbach, Jennie Johnson and her husband, and
plaintiff in error and her husband, and to include their in-
terests in the land. The names of all these parties appear
as signing this mortgage, but plaintiff in error claims that
she did not sign it. The original instrument is found among
the exhibits in this record, as are also two instruments con-
taining her signature which plaintiff in error concedes to
be genuine. An examination of these signatures furnishes
ground for argument that they might not have been writ-
ten by the same person. The notary public who took the
acknowledgment testified that Mrs. Kepcha signed and ac-
knowledged the mortgage in question in his presence and
that of the defendant in error James C. Lowman, the latter
also testifying that he was present and saw her sign. The
plaintiff in error denies all knowledge of this $2675 mort-
gage. Her brother Edward Lowman testified that he talked
to her about it before it was prepared, and she agreed to
sign. When she testified she was an elderly lady, and her
evidence on this, as on other points in dispute, is some-
what confused. It may be argued from certain parts of
her testimony that she admits acknowledging the paper.
No misrepresentations by Glassford, or any other person,
were shown, and we are of the opinion that this mortgage
was given to secure *bona fide* debts which were contracted
by a portion of the heirs and for the benefit of all of them,
and that it was signed by plaintiff in error, or some one for
her, with her consent, and acknowledged by her. This be-

ing so, plaintiff in error's share of the real estate should be held for its *pro rata* share of the indebtedness in question.

Plaintiff in error contends that Elizabeth Wagenbach and the estate of Elizabeth Lowman, deceased, should be compelled to account for the rents and profits received from the real estate for certain years. It appears that after the death of John Lowman a written agreement was entered into by certain of the heirs, to the effect that the widow, Elizabeth Lowman, and her daughter Elizabeth Wagenbach, should occupy a residence on the farm and have the use of certain buildings, the orchard and a small part of the land, and that as further compensation for her services in attending to her mother, Elizabeth Wagenbach should receive $75 a year. While the record does not show positively that the plaintiff in error signed this agreement, it is conceded that she understood and assented to its terms. Elizabeth Wagenbach acted under the contract and took care of her mother in accordance therewith, living in the house on the farm for the most of the time, with the exception of a year or so spent with her mother in the city of Washington, in Tazewell county. The mother was feeble and needed much attention during the last years of her life. No fault is found with the care that was given her, but it is contended that Elizabeth Wagenbach kept more cows and hogs on the farm than the contract called for. The evidence, however, tends to show that these were kept on land that could not be rented to other parties, evidently mostly timber land. The part of the farm not used by Elizabeth Wagenbach and her mother was under the control of Joseph Thompson, an agent for the heirs, who collected the rent, paid the taxes, the interest on the mortgage, and made repairs. He rendered yearly statements to the heirs of the amounts received and paid out, but these were apparently mislaid and do not appear in evidence. It is impossible to tell accurately how much of the rents remained after paying the interest on the Glassford mort-

gage, taxes and repairs and the agent's commissions, but it is manifest that the amount was not much, if any, greater than the one-third to which the widow would be entitled had she been assigned her dower. Apparently some modifications were made in the agreement concerning the disposition of the rents and profits from time to time as circumstances required, and the amount to be used in supporting the widow was left somewhat to Thompson's discretion. It is evident, moreover, that all the heirs, including plaintiff in error, understood and assented to what was being done; that Mrs. Wagenbach cared for her mother for a period of about fourteen years and until her death, and that whatever balance was derived from the farm was used for the widow's support.

Counsel for plaintiff in error contends that the widow could have no estate in her husband's land until she had demanded and had assigned to her her dower rights, and that she was not entitled to any share of the rents and profits, as against the heirs, until she made such a legal demand or her share had been set off or assigned to her. The owner of the dower estate may, by an arrangement with the heirs, receive certain portions of the rent for her dower. (*Sill* v. *Sill,* 185 Ill. 594.) Such an agreement was clearly entered into in this case by plaintiff in error.

Counsel for plaintiff in error further contends that the sheriff's deed which conveyed her interest in a part of the premises to her brother James C. Lowman was void because based on a void judgment. July 30, 1896, one Hugh M. Reynolds recovered a judgment before a justice of the peace in Tazewell county against plaintiff in error and her husband for $84.80 and costs, upon a claim for lumber. September 5, 1896, a transcript of the judgment was certified to by the justice, and on February 11, 1897, was filed in the office of the clerk of the circuit court of Tazewell county. About two years later an execution was issued upon said transcript and the sheriff levied upon the interest

of plaintiff in error in about 170 acres of the land left by her father. A sheriff's sale was had, and M. N. Gish, the attorney for plaintiff in the justice case, became the purchaser. The certificate of sale thereafter became, by purchase and assignment, the property of James C. Lowman, one of the defendants in error, and a sheriff's deed was issued to him. The transcript upon which the execution and sale were based gives as the return of service the following: "Personally served the within writ by reading the same to the within named defendant, George Kepcha, leaving a copy for Rebbeka Kepcha with her husband, the 25th day of July, 1896." Section 4 of article 2 of chapter 79, on justices and constables, requires that summons shall be served "by reading the same to the defendant." (Hurd's Stat. 1909, p. 1384; see, also, *Law* v. *Grommes,* 158 Ill. 492.) Section 6 of the same article provides that if the defendant shall evade service or not listen to the same, or secrete himself, the officer may serve the same by leaving a copy at his place of residence with some person of the age of ten years or upwards, and "in all such cases the constable shall make a special return when and how served, and the circumstances attending the same; and if the justice shall be satisfied that the defendant evaded the service by reading, and that the party is sufficiently notified and summoned, he shall proceed to hear and determine the case." Manifestly, the return found in the transcript did not set out any circumstances which justified a service by copy. A judgment founded on such a service would be void. *Pardon* v. *Dwire,* 23 Ill. 523; *Morris* v. *Hogle,* 37 id. 150; *Johnson* v. *Baker,* 38 id. 98; *Botsford* v. *O'Connor,* 57 id. 72.

Counsel for defendants in error concede that the service as shown in the transcript would not be sufficient upon which to base a judgment, but contend that the evidence in the record shows that the plaintiff in error was personally served by the officer reading the summons to her. Without

considering or deciding whether extrinsic evidence was admissible to contradict the return of the constable, we think the evidence offered to show that the constable personally served the plaintiff in error is unsatisfactory and that the weight of the evidence in the record supports the contention of the plaintiff in error that the method of service on her was as set forth in the transcript. The sheriff's deed here in question must be held invalid, as based on a void judgment.

Other questions are raised in the briefs, but as counsel for plaintiff in error states that she is satisfied with the decree except as to the matters already referred to, these other questions need not be discussed.

The decree of the circuit court will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.          *Reversed and remanded.*